# SUPREME COURT—IN ADMIRALTY.

### ISAAC AIKAKE *et als. vs.* SHIP "HIBERNIA."

IT IS THE duty of seamen to render all the aid in their power to the ship in distress; but where the ship, after being taken into port, was found to be so much injured as to be rendered unseaworthy, so that material repairs were necessary, held that the seamen were entitled to a reasonable compensation beyond their ordinary wages, for labor done in repairing and in the necessary preparation for repairs; such as unlading and restowing the cargo on board, at the port where the repairs were made.

No discrimination, in this respect, between seamen engaged in the whaling service and those in the merchant service.

Duty of owners to keep the ship in a seaworthy condition, and when she ceases to be so, they must incur the expense of repairs and not impose it on the seamen.

The principle that it was not customary to pay for the extra labor of the seamen in repairing the ship, unless she was insured, regarded as unsound.

To make a statute forfeiture of wages, on account of desertion, under the Laws of the United States, it is indispensable that the Log Book should contain an entry of the name of the seaman on the day when the absence takes place, and that he is absent without leave.

ALLEN C. J.

This is a suit by libel against the ship "Hibernia," for work and labor done in repairing said vessel at Hongkong.

It appears that libellants shipped on said vessel for a whaling voyage, at this port, in November last, and that soon thereafter the said voyage was commenced, and on their passage the ship met with a severe disaster at the Island of Ascension. The ship was aground about eighteen hours, and after severe labor she was put afloat. The accident occurred on the 8th of February, and the ship sailed on the 13th for Guam and Hongkong, and arrived at the latter place on the 10th of March. She required pumping most of the time, and Captain Bumpus, who was then mate, but subsequently master, testifies that, in his opinion, if there had been bad weather, the ship would have sunk. Immediately on arrival the ship was discharged, hove out, repaired, caulked on the bottom and coppered throughout, all of which was completed on the 3d of May, and on the 5th she sailed on her whaling voyage. Captain Bumpus testifies

that the Hawaiian crew, including the present libellants, labored on the ship all the time except two days ; that the labor was severe all the time. It became necessary to discharge the cargo, which consisted of about 800 barrels of oil taken the previous season, and in which these parties had no interest, on board a store ship. He says he heard Capt. Edwards say he should pay the Hawaiians $1 per day and the boatsteerers $2 per day. Mr. Hyde was on board the ship, as he says, in various capacities, but last in that of purser, and he testifies to the same declaration of the Captain. It is in proof that the labor of the Hawaiians is far more valuable than that of the common laborers of China, for such service as was required on the ship ; and Capt. Sayers, of the whaleship "Republik," is of opinion that it is worth from seventy-five cents to one dollar per day ; that these men being accustomed to the duties of the ship would be worth from two to three times as much as the Chinamen.

The counsel contended that it was the duty of the seamen as co-partners, to stand by the ship in distress. (Coffin *vs.* Jenkins, 3 Story, 108.)

The seamen in this case were not co-partners, neither had they the slightest interest in the cargo of oil, still it was their duty to render all the aid in their power to the ship in distress, as they did at the Island of Ascension, and on the passage to Hongkong, but for labor done in repairing, and in the necessary preparation for repairs at the port where they were made, I am of opinion that it is sound upon every principle of maritime usage, that a reasonable compensation should be paid them. In the case of the "Philomela" (1 Hawaiian Rep., p. 105), it was decided that the expenses of wages and provisions during a delay and going out of the course of the voyage to refit are to be contributed for in general average. These expenses are classed among the general average losses. This may be considered the American doctrine, recognized in this country, as applicable to the merchant service, but only in degree to the whaling service. (Abbott on Shipping, 498 and note ; 3 Sumner, 27 ; 3 Sumner, 400.)

The seamen on a whaling voyage are employed for a certain proportion of the oil and bone which may be taken, whereas

the merchant seamen are employed by the month, no matter what the amount of freight may be which may be earned ; in each case it is the duty of the owners to have their vessels in seaworthy condition when they embark, and, if she meets with disaster, it is the duty of the seamen to render all the aid in their power to restore her from danger and injury, and no pay is claimed by libellants till the port of repairs is reached, and the labor necessary for her repairs is commenced. I desire to be explicitly understood as not including within this principle any claim of payment for the ordinary repairs on shipboard, nor for labor in getting the ship into port ; but in cases similar to the present, where the ship has been so injured as to be rendered unseaworthy, so that material repairs are necessary and she is substantially and permanently benefited. The only interest the libellants had in the vessel was her use, for a few months, the ensuing whaling season. By the shipping articles the engagement terminated in November, and she arrived at this port on the 2d. Their labor contributed to permanent repairs, not for the present voyage only. Repairing garboard streak, caulking the hull, and coppering throughout, as in the present case, were permanent repairs, in which the owners were largely interested, and the seamen only for a few months. In addition they performed severe labor at the Island of Ascension, and in working the ship to Hongkong. In view of these considerations, and of the express promise of the Captain, who, from his long experience, has a very good knowledge of the rights of the ship as well as of the seamen, and of the value of their labor at the place of repairs, I am of opinion that they are entitled to be paid. The monthly wages of the seamen in the merchant service would be continued, and I can see no reason of the discrimination against those in the whaling service, to the whole amount of their labor. It is the duty of the owners to a greater extent than I have commented upon, to keep the ship in seaworthy condition, and when she ceases to be so, they must incur the expense of repairs, and not impose it on the seamen. Against this contingency insurance can be effected by them. In this case, however, it is in evidence by one of the Hawaiians that the Captain, before the work began, promised them $1 per day for their labor on the repairs, which is con--

firmed by Capt. Bumpus and Mr. Hyde, who testified that they heard the Captain say that he should pay the foremast men $1 per day, and $2 to the boatsteerers. I regard this agreement on the part of the Captain as obligatory. Some testimony has been adduced to show that it is not the custom to pay for labor performed by seamen under these circumstances, unless the vessel is insured. I cannot recognize any such distinction for a moment. The men are either entitled to pay for their labor, or they are not, and are not at all dependent upon whom the ultimate responsibility of the payment rests. Be this as it may, no evidence is adduced that the vessel was insured, and therefore the defense is not sustained even upon this principle, which I regard clearly as unsound.

It is further contended that, if entitled to pay at all, they are not from the 10th of March to the 24th, when the carpenters commenced work, for, during this period, they were employed in discharging cargo, in pumping ship, etc., which was necessary to enable the repairs to be made, and while the repairs were going on it appears that the libellants hove the ship up and down, and kept her clear of water by pumping, and aided the carpenters in various ways, such as passing the copper, nails, etc., etc. As Captain Bumpus says, they were employed all day at hard work. It is contended that, after the repairs were complete on the 14th of April, they should be entitled to nothing more, but the same principle applies to restowing the cargo as the unloading, all which is incident to the repairs. It is analogous to the case of general average when it becomes necessary to take out and store the cargo till the repairs are made and then return it. The whole expense of this is to be averaged. So, too, the pumping of the ship for the common good, or any similar expense, is a general average expense. (1 Parsons on Maritime Law, 298.)

The counsel for the claimants proposes to introduce evidence of the desertion of some of the libellants while at Hongkong ; to this objection was made, but the Court said the evidence might be introduced, subject to further consideration.

It appeared in evidence that, after the 29th of April, when this labor was completed for which compensation is claimed, some of the libellants deserted, but no allegation

to this effect is made in the answer ; and strictly no proof to this effect should have been admitted ; for in Admiralty proceedings, as Chief Justice Story says, in Cloutman *vs.* Tunison, the cause must be heard upon the proof as applied to the allegations. No proofs are admissible of any facts not propounded in the allegations, and the decree must stand upon both. Whatever is not alleged is *coram non judice.* The Court will, however, remark that to make a statute forfeiture of wages, it is an indispensable condition that the person having charge of the log book should make an entry of the name of the seaman on the day when the absence takes place, and that he is absent without leave. The entry is, "seven men took a boat and run away." The requisites of the statute must be rigidly complied with in order to insure the penalty. Here the names of the seamen are not written, and by the log no one of the Hawaiians could be designated. In the case of the "Rovena," (Ware, 310), Judge Ware ruled that the entry to support the statute forfeiture must be made the day the absence takes place, and it must state the name of the seaman, and that he was absent without leave ; an entry that the crew were absent, or that all the crew were absent, will not be sufficient without mentioning the names of the seamen against whom the forfeiture is proposed to be enforced. It appears they were absent two days, and were returned to the ship and remained faithful to the ship during the residue of the voyage, and for which they have been paid, and they have paid already thirty-six dollars each for the expenses of capture, and I am of opinion that this is sufficient, especially as no evidence is given of any inconvenience from their absence, it having occurred after the labor incident to the repairs was accomplished.

By the 7th Section of the Act of 1790, United States Laws, the master is authorized to charge the expenses of commitment to the seaman and deduct them from his wages. Can he also insist upon the entire forfeiture of his wages under the 5th Section ? It was ruled in the Atlantic (Bee's Rep., 48) that the penalties in these two sections are not cumulative, and that the master may take his remedy under one or the other, but if he elects to imprison the seaman under the 7th Section, he waives the forfeiture under the 5th.

This is the view taken by Judge Ware in the case of Sherwood *vs.* McIntosh, (Ware's Rep., 113.)

An account has been filed by the agent of the owners, of the payment made to each of the libellants, and which is admitted by them as correct. The Court is of opinion that each of the libellants who are foremast hands are entitled to payment for forty-six days' labor, at one dollar per day, less the amount charged against them in the account above referred to, and that the boatsteerers are entitled to two dollars per day for forty-six days' labor, less the amount charged against them. A decree will be made accordingly, with costs.

Mr. Harris, for libellants.

Mr. Austin, for claimants.